IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN  DISTRICT OF GEORGIA
ATLANTA DIVISION

GREENLIGHT FINANCIAL
TECHNOLOGY, INC.,

      Plaintiff,

          v.

JORDAN NICHOLS,

      Defendant.

Case No. 1:21-cv-02414-SCJ

**SPECIALLY APPEARING DEFENDANT JORDAN NICHOLS'S
MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS
THE COMPLAINT PURSUANT TO
FED. R. CIV. PROC. 12(B)(2) AND 12(B)(6)**

Defendant Jordan Nichols, through the undersigned counsel, specially appears and submits this Memorandum in Support of its Motion to Dismiss Greenlight Financial Technology, Inc.'s ("Plaintiff" or "Greenlight") Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Greenlight, a Georgia-based business, brought this lawsuit against Mr. Nichols in an improper attempt to restrain him from practicing his profession with Step Mobile, Inc. ("Step"), a California-based competitor that Greenlight views as an increasing threat to its business.  Recognizing that Mr. Nichols is a California resident and therefore protected by strong California public policy against unlawful restrains of trade, Greenlight sued Mr. Nichols in Georgia state court, contending that he likely has (or will soon) engage in trade secret misappropriation. Greenlight's claim is based solely on the speculative allegations that in joining Step, it will be nearly impossible for Mr. Nichols not to rely on Greenlight's trade secrets he was exposed to during his tenure with his prior employer, Facebook, Inc. ("Facebook").

In its hasty attempt to drag Mr. Nichols into Georgia court, Greenlight makes no showing as to how Mr. Nichols has had any contact with Georgia that would warrant the exercise of personal jurisdiction over him or any specific conduct Mr.

Nichols engaged in that would give rise to a misappropriation claim.  Mr. Nichols is a California resident who has not engaged in any conduct in Georgia sufficient to give rise to Greenlight's claims and Greenlight's misappropriation of trade secrets claim is based on nothing more than conclusory allegations which are insufficient to state a misappropriation claim both legally and factually.

Under these circumstances, Greenlight's action should be dismissed.

## FACTUAL BACKGROUND

**I.      MR. NICHOLS IS A RESIDENT OF CALIFORNIA AND DOES NOT CONDUCT BUSINESS OR ANY OTHER ACTIVITY IN GEORGIA.**

Jordan Nichols is an individual residing in the state of California.  *See* Ex. 1, Declaration of Jordan Nichols in Support of Motion to Dismiss ("Nichols Decl.") ¶ 2.  Both during and after his employment with Facebook, Mr. Nichols has been a resident of California.  *Id.* ¶ 3.  He does not own or lease any real estate in Georgia. *Id.* ¶ 4.  He has not registered to do business or obtained any license with the Georgia Secretary of State or any other administrative agency in Georgia.  *Id.* ¶ 5.  He does not direct any particular advertising efforts for any his business to Georgia, and does not regularly purchase or sell any goods or services to any individual or business inside Georgia.  *Id.* ¶ 6.  Mr. Nichols has never sued any person in a Georgia court. *Id.* ¶ 7.

During his employment as Facebook's Client Partner, Mr. Nichols was

assigned Greenlight as one of a number of financial technology ("fintech") customers to support for advertising sales. *Id.* ¶ 13. Such customers were based in California or Washington State. *Id.* In the capacity of Client Partner, Mr. Nichols never traveled to Georgia for business or to specifically meet with Greenlight on Facebook's behalf. *Id.* ¶ 8. Mr. Nichols's interactions with Greenlight during his tenure with Facebook were done remotely from California. *Id.* ¶ 9. In fact, the only time Mr. Nichols entered the State of Georgia was during hours-long layovers between flights connecting through Hartsfield-Jackson Atlanta Airport. *Id.* ¶ 8.

## II.   RELEVANT ALLEGATIONS IN THE COMPLAINT.

In its Complaint, Greenlight alleges that as an employee of Facebook and in his capacity as Facebook's Client Partner, Mr. Nichols worked with Greenlight, a Facebook client. Compl. ¶ 12. Greenlight alleges that in his capacity as Facebook's Client Partner and in working with Greenlight on Facebook's behalf, Mr. Nichols had access to Greenlight's confidential information and trade secrets and that such information was protected from disclosure pursuant to a mutual nondisclosure agreement entered into between Greenlight and Facebook. *Id.* ¶¶ 16-20. Greenlight alleges that as part of his job at Facebook, Mr. Nichols engaged in video calls, Zoom meetings and occasional telephone calls with employees of Greenlight and references specific Greenlight employees Mr. Nichols purportedly interacted with

on these calls and Zoom meetings.  *Id.* ¶ 21.

In terms of Mr. Nichols's specific conduct, Greenlight alleges that on May 5, 2021, Mr. Nichols requested a one-on-one meeting with Greenlight's Chief Marketing Officer ("CMO") Rachel Hamilton, during which he asked Ms. Hamilton a series of questions about Greenlight's business, such as strategic priorities, partnerships, and her point of view on Step and Greenlight's competitive response. *Id.* ¶¶ 23, 24.  Greenlight alleges that following this meeting, Mr. Nichols accepted employment with Step.  *Id.* ¶ 25.  As alleged by Greenlight, Step is an early-stage financial technology company in the parent and child sector of the fintech industry that directly competes with Greenlight as a provider of parent-managed payment cards for children and teenagers.  *Id.* ¶ 27.

Aside from conclusory allegations that Mr. Nichols "disclosed and/or is presently disclosing Greenlight's confidential and proprietary trade secret information during the course of his employment at Step" (Compl. ¶ 28), Greenlight does not allege any facts that Mr. Nichols improperly stole, used or disclosed Greenlight's trade secrets.  For example, Greenlight alleges at a high level that Mr. Nichols was "privy to the success of Greenlight's specific product and feature offerings developed over the years," and that "he already has and/or will inform Step's decision making regarding what products and features to build based on

Greenlight's success."  Greenlight further alleges that Mr. Nichols "has gathered sufficient information . . . from Greenlight to essentially re-create Greenlight's business model and successful marketing efforts at Step, . . . without any of the expenditure, time, or effort that Greenlight expended, which is irreparably harmful to Greenlight."  Compl. ¶ 39.

## ARGUMENT

## I.  GREENLIGHT'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

### A.    Legal Standard

A plaintiff who seeks to exercise personal jurisdiction over a nonresident defendant has the initial burden of alleging sufficient facts in the complaint to make out a prima facie case of jurisdiction.  *Diamond Crystal Brands, Inc. v. Food Movers International, Inc.*, 593 F.3d 1249, 1257 (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).  If the plaintiff meets its burden, the defendant may challenge jurisdiction by submitting affidavit evidence in support of its position, upon which "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction."  *Id.* (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).

A federal court sitting in diversity has personal jurisdiction over a non-resident defendant if the exercise of jurisdiction (1) is permitted under the state's

long-arm statute and (2) does not violate the Due Process Clause of the Fourteenth Amendment. *Id.* at 1257-58. The two prongs are distinct inquiries because Georgia's long-arm statute does not provide jurisdiction that is coextensive with due process. *Id.* at 1259. Instead, the long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Id.* Both prongs of the jurisdictional inquiry must be satisfied. *Id.* at 1263.

Under Georgia's Long-Arm Statute, which must be interpreted and applied literally, the plaintiff must establish that jurisdiction is permitted under an express statutory provision. *Id.* at 1259 & n. 10. Under the Due Process Clause of the Fourteenth Amendment, the defendant must have "fair warning" of litigation in Georgia due to having established "minimum contacts" with the state. *Id.* at 1267.

**B.    Georgia's Long-Arm Statute Does Not Confer Jurisdiction Over Mr. Nichols.**

Georgia's Long-Arm Statute sets forth several enumerated circumstances under which personal jurisdiction may be conferred over non-resident defendants. The statute provides in relevant part: "A court of this state may exercise personal jurisdiction over any nonresident . . . , as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section," if the nonresident,

(1) Transacts any business within this state; (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; [or] (4) Owns, uses, or possesses any real property situated within this state . . . .

O.C.G.A. § 9-10-91(1)-(4).[1]

Although Plaintiff does not cite to a specific provision of the Long-Arm Statute, the only potentially relevant subsections of the Long-Arm Statute are subsections (1) though (4).  None of these subsections are met here and Greenlight cannot maintain an action against Mr. Nichols in Georgia under Georgia's Long-Arm Statute.

### i.  Mr. Nichols Does Not Transact Business In Georgia.

Under subsection (1) of the Long-Arm Statute, jurisdiction may be exercised over a defendant who "[t]ransacts any business within" Georgia.  O.C.G.A. § 9-10-91(1).  This requires defendant to have "purposefully done some act or consummated some transaction" in Georgia.  *Diamond Crystal*, 593 F.3d at 1260 (quoting *Aero*

---

[1] Sections (5) and (6) of the Long-Arm Statute deal with the exercise of jurisdiction in the context of a defendant who has special proceedings (such as divorce, separation, and other domestic relationships) pending or has been subject to the exercise of jurisdiction in Georgia courts involving certain special proceedings which are not at issue in this action.

*Toy Store, LLC v. Grieves*, 631 S.E.2d 734, 736-37 (Ga. Ct. App. 2006)).   The defendant's physical presence in the state to perform the act is not required, and the court must consider a defendant's "intangible" acts, such as mail and telephone calls. *Id.* at 1264.   Defendant must, however, "fairly be said" to have literally "transacted" busines in Georgia.   *Id.*

In *Gee v. Reingold*, 259 Ga. App. 894, 896, 578 S.E.2d 575, 579 (Ga. Ct. App. 2003), the Georgia Court of Appeals found that a Tennessee attorney who had represented the plaintiff, a Georgia resident, in an action outside of Georgia, was not subject to personal jurisdiction under subsection (1) of the Long-Arm Statute where his only Georgia-based contacts were phone calls and faxes between him (while he was in Tennessee) and the plaintiff (while plaintiff was in Georgia).   The court reached this conclusion based on the principle that "standing alone, a nonresident's telephone or mail contact in Georgia, or even a nonresident's visits to Georgia, is generally insufficient to show the minimum contacts with the State necessary to establish personal jurisdiction."   *Id.* (internal quotations omitted)*; see also John Gallup & Associates, LLC v. Conlow*, No. 1:12-CV-03779-RWS, 2013 WL 3191005 (N.D. Ga. June 21, 2013) (holding that the court could not assert personal jurisdiction over defendant, a former employee of plaintiff, even considering, among other things, that defendant's daily duties involved email and telephone

conversations with plaintiff's office personnel, including the principal office in Georgia, that defendant was involved in obtaining plaintiff's corporate registration with the Georgia Secretary of State, that defendant allegedly worked on two of plaintiff's Georgia projects, and that defendant mailed packages to plaintiff's Georgia office and received packages from that office).

Here, Mr. Nichols's purported interaction with Greenlight is even more attenuated than the interactions between the defendant and plaintiff in *Gee*. Mr. Nichols's communications were limited to digital and virtual means, which, although must be considered as part of the contacts analysis, are not enough on their own to satisfy subsection (1) of the Long-Arm Statute. Greenlight admits that the interactions between its employees and Mr. Nichols was conducted through video calls, Zoom meetings, and "occasional" telephone calls. Compl. ¶ 21. In *Gee*, the court found there was no personal jurisdiction even after considering the fact that the defendant had been physically present in Georgia with the plaintiff before, and had sent his bills for legal fees to the plaintiff in Georgia. *Id.* at 895. There is no allegation or evidence to suggest that Mr. Nichols was ever physically present in Georgia, either to visit Plaintiff or otherwise, or that Mr. Nichols sent bills to Plaintiff in Georgia. Thus, Mr. Nichols's interactions with Greenlight are even more minimal than was the case for the defendant in *Gee*. *See id.* at 897.

Furthermore, although the plaintiff in *Gee* was a Georgia client of the non-resident defendant, here, Greenlight was a customer of Mr. Nichols's *employer*, Facebook, not Mr. Nichols's own customer.  *See id.* at 895.  Any interaction Mr. Nichols may have had with Greenlight's employees and representatives was therefore at the direction of his employer, and not independently undertaken by Mr. Nichols.  Finally, like in *Gee*, there is no evidence here that Mr. Nichols negotiated any contracts in Georgia with plaintiff.  Thus, he cannot be found to have transacted business in Georgia.

### ii.  Mr. Nichols Did Not Commit A Tortious Act Or Omission Within Georgia.

For jurisdiction to be proper under the second subsection of the Long-Arm Statute, the defendant must have "commit[ed] a tortious act or omission within" Georgia.  O.C.G.A. § 9-10-91(2).  Crucially, "a tort occurs when and where the actual injury or accident takes place, and not the place of the economic consequences of that injury."  *Exceptional Mktg. Grp., Inc. v. Jones*, 749 F. Supp. 2d 1352, 1363 (N.D. Ga. 2010) (quoting *Atlanta Propeller Serv., Inc. v. Hoffman GMBH & Co.*, 191 Ga. App. 529, 382 S.E.2d 109, 111 (Ga. Ct. App. 1989)).

The tortious acts or omissions that Greenlight alleges all would have taken place in California, and in any case not within Georgia.  For example, Greenlight alleges that Mr. Nichols acquired its trade secrets while working with Greenlight as

part of his job responsibilities at Facebook. That is not alleged to be tortious. Greenlight alleges that Mr. Nichols engaged in misappropriation by using or disclosing its trade secrets in furtherance of his employment with Step. If those conclusory allegations of misappropriation are assumed to be true, that conduct still would take place squarely within the borders of the California.

To the extent Plaintiff alleges that Mr. Nichols solicited its trade secrets for an improper purpose, Georgia courts have ruled that when a defendant uses the telephone or email to contact a Georgia resident, defendant's conduct, assuming it is tortious, occurs at the place where defendant speaks into the telephone or types and sends his email. *See Anderson v. Deas*, 279 Ga. App. 892, 893–94, 632 S.E.2d 682 (Ga. Ct. App. 2006) (no personal jurisdiction existed over a defendant who made harassing telephone calls to a Georgia resident from another state); *Huggins v. Boyd*, 304 Ga. App. 563, 565, 697 S.E.2d 253 (Ga. Ct. App. 2010) (concluding—based on *Anderson*—that no personal jurisdiction existed over a nonresident defendant who emailed Georgia residents); *LABMD, Inc. v. Tiversa, Inc.*, 509 F. App'x 842, 844 (11th Cir. 2013) (citing *Anderson* and *Huggins* with approval).

In *LABMD*, the Court of Appeals for the Eleventh Circuit held that an individual defendant, who was a resident of New Hampshire, did not commit tortious acts in Georgia, as required for the exercise of personal jurisdiction over the

defendant under Georgia's long-arm statute.   509 F. App'x at 844. There, the plaintiff claimed that the defendant used computers outside of Georgia to open an internet port on plaintiff's computer, and therefore committed a tortious act in Georgia.  *Id.*  The court disagreed and found that the use of technology by an out-of-state defendant that causes the transmission of information along telephone or electronic lines between the defendant and a Georgia plaintiff is not a tortious act within Georgia sufficient to confer personal jurisdiction over the defendant.  *Id.*

The single instance of a Zoom meeting on May 5, 2021, even assuming that such a meeting constituted tortious conduct, cannot serve as the basis to hale Mr. Nichols into Georgia court and certainly does not comport with the requirements of the Long-Arm Statute to hold that Mr. Nichols committed a tortious act *within Georgia*.[2]

### iii.  Mr. Nichols Did Not Commit A Tortious Injury In Georgia.

Even assuming, *arguendo*, that Mr. Nichols's May 5, 2021 Zoom meeting with Greenlight was a tortious act that caused injury to Greenlight in Georgia, personal jurisdiction under subsection (3) of the Long-Arm Statute can be found

---

[2] Greenlight does not set forth any factual allegations regarding Mr. Nichols's purported misappropriation of its trade secrets in his new employment with Step.  In any event, Step is based in California and therefore any such events cannot serve as the basis for personal jurisdiction over Mr. Nichols in Georgia.

only if a defendant "*regularly* does or solicits business, or engages in any other *persistent* course of conduct, or derives *substantial* revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91(3) (emphases added); *Innovative*, 279 Ga. at 674 (holding that subsection (3) of the Long-Arm Statute must be read and applied literally).  Mr. Nichols, an individual, does not regularly conduct or solicit any business in Georgia, engage in any other persistent course of conduct in Georgia, or derive substantial revenue due to goods used or consumed or services rendered in Georgia.  There is no allegation or evidence to suggest otherwise.  He is a California resident, employed in California and whose only contact with Greenlight in Georgia has been virtually and at the request and behest of Mr. Nichols's former employer, Facebook, based in California.  As was stated in the Complaint, Mr. Nichols was assigned to work with Greenlight by Facebook through no choice of his own.  Compl. ¶ 12.

### iv.  Mr. Nichols Does Not Own Property In Georgia.

Mr. Nichols does not own, use, or possess any real property in Georgia (Nichols Decl. ¶ 5), making subsection (4) of the Long-Arm Statute inapplicable.

### C.    The Exercise of Jurisdiction Over Mr. Nichols Does Not Comport With Due Process.

Under the Due Process Clause, personal jurisdiction over a defendant may be either general or specific.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*,

564 U.S. 915, 919 (2011).  General jurisdiction -- which allows a nonresident party to be sued in that state on any claim -- requires that the nonresident party's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 919.  "This is a rigorous standard" that is "significantly higher than for specific jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).  Specific jurisdiction must arise out of the events or transactions that are underlying the claim forming the basis of the lawsuit.  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).  This analysis hinges "on the relationship among the defendant, the forum, and the litigation." *Id.* (internal citation omitted).

In particular, specific jurisdiction requires consideration of each of these three factors: "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)).  The "purposeful availment" requirement ensures that "a defendant will not

be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp.*, 471 U.S. at 475.

Greenlight has not met the burden of showing that Georgia has general or specific jurisdiction over Mr. Nichols, that Mr. Nichols has purposefully availed itself of the privilege of conducting activities in Georgia, or that Greenlight's claims arise out of or result from Mr. Nichols's forum-related activities. Furthermore, any exercise of jurisdiction over Mr. Nichols would be unreasonable and would offend traditional notions of fair play and substantial justice.

### i.     There Is No General Jurisdiction Over Mr. Nichols.

To establish general jurisdiction, a defendant's contact with the forum state must be so continuous and systematic as to render them essentially "at home" in the forum state. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014). Mr. Nichols is a resident of California, works in California and has never traveled to Georgia for business. Nichols Decl. ¶¶ 2, 3, 8. Consequently, Mr. Nichols is not "at home" in Georgia for purposes of general jurisdiction. *See Goodyear*, 565 U.S. at 919; *Daimler*, 134 S. Ct. at 761. Accordingly, Mr. Nichols does not have a sufficient connection to Georgia to permit general, all-purpose jurisdiction.

### ii.    Mr. Nichols Has Not Made Sufficient Contacts with Georgia to Warrant the Exercise of Specific Personal Jurisdiction.

Because Greenlight cannot base personal jurisdiction on a theory of

"systematic and continuous" contacts between Mr. Nichols and Georgia, this Court may only exercise personal jurisdiction only if Greenlight can demonstrate that (1) its claim arises out of or relates to at least one of Mr. Nichols's contacts with the forum and (2) that Mr. Nichols "purposefully availed" himself of the privilege of conducting activities within Georgia, thus invoking the benefit of Georgia's laws. *See Louis Vuitton*, 736 F.3d at 1354.

### 1. Greenlight's Claims Do Not Arise Out of Any of Mr. Nichols's Contacts With Georgia.

The focus of the court's inquiry when considering whether any of the claims arise out of or relate to the defendant's contacts with the forum must be on the "***direct*** causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355-56 (emphasis added). There is no direct causal relationship between Mr. Nichols, Georgia, and the litigation. Greenlight alleges that Mr. Nichols improperly disclosed and used, and is continuing to improperly disclose and use, its trade secrets in connection with his employment at Step. Compl. ¶ 50. Mr. Nichols is a California resident and Step is headquartered in California and does not have any offices or employees in Georgia. Therefore, any causal connection between Mr. Nichols, Georgia, and the litigation is indirect and remote.

### 2.   Mr. Nichols Has Not Purposefully Availed Itself of the Privilege of Conducting Activities In Georgia.

The "purposeful availment" test differs depending on the underlying nature of the claims put forth by the plaintiff.   Under the "traditional purposeful availment analysis," the court assesses the contacts that a nonresident defendant has with a forum state and asks whether those contacts: "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008).

Mr. Nichols cannot be found to have the minimum contacts requisite to subject him to personal jurisdiction in Georgia.  Mr. Nichols's contacts with Georgia were limited to speaking with Greenlight's employees over Zoom meetings, video calls, and, occasionally, telephone calls, all in the course of his employment with Facebook and not of his own accord.   Compl. ¶ 21.   He could not have known whether such individuals were in Georgia or elsewhere, particularly due to the nature of remote work during the COVID-19 pandemic.   Nichols Decl. ¶ 11.   Furthermore, Mr. Nichols was assigned to work with Greenlight as a Client Partner by Facebook. Compl., Statement of Facts.   He was not engaged in the sales discussions to bring Greenlight on as a Facebook customer.  *Id.* ¶ 12.   He had a number of other customers

to whom he was assigned by Facebook to work with as a Client Partner, and such customers were based in various states around the country. *Id.* ¶ 13. He had no control over the customers to whom he would be assigned. *Id.* Decl. ¶ 14. In light of this lack of control over assignment, it cannot be said that Mr. Nichols "purposefully availed himself of the privileges of doing business" within Georgia— he was assigned to work with a customer (Greenlight) whose employees happened to be based in Georgia during their conversations.

### 3. Exercising Personal Jurisdiction Over Mr. Nichols Would Offend Notions of Fair Play and Substantial Justice.

Even if Greenlight could satisfy the first two prongs of the specific jurisdiction test, a Georgia court may not exercise jurisdiction over him if it would offend traditional notions of fair play and substantial justice. Whether the extension of personal jurisdiction is constitutionally reasonable requires the consideration of numerous factors, including: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute. *Id.* at 1358.

As stated above, Mr. Nichols never directed any activity against Greenlight in Georgia. Any witnesses that the parties may call are either going to be located in California or in the states (other than Georgia) in which the alleged misappropriation

took place.  Greenlight can seek relief in California, which is the more appropriate forum.  And, finally, given that this is a private dispute, substantive social policies are hardly implicated here and to the extent any public policies are implicated, California's strong public policy against unlawful restraints on a California resident's freedom to practice his profession should be a factor weighing against the exercise of jurisdiction over Mr. Nichols in Georgia.  Simply put, Mr. Nichols is an individual who has now been placed under a restriction from being able to work and is facing uncertainty regarding his livelihood due to Greenlight's decision to file suit in Georgia state court, and haling him into court in Georgia has imposed and would continue to impose a heavy burden on him.  This does not comport with the notions of fair play and substantial justice.  *See Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1272 (9th Cir. 1981) ("The law of personal jurisdiction . . . is asymmetrical. The *primary concern is for the burden on a defendant* . . . . The burdens on a defendant are of particular significance [where] the defendant has done little to reach out to the forum state.") (emphasis added).

## II.   GREENLIGHT'S COMPLAINT SHOULD ALTERNATIVELY BE DISMISSED FOR FAILURE TO STATE A CLAIM.

### A.   Legal Standard

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   "Legal conclusions can provide a framework for the complaint, but they must be supported by factual allegations." *Smith v. Owen Financial*, 488 F. App'x 426, 427 (11th Cir., Aug. 30, 2012).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully."   *Iqbal*, 556 U.S. at 678.   Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level," and "a formulaic recitation of the elements of a cause of action will not do."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**B.   Greenlight's Trade Secrets Claim and Derivative Claims Should Be Dismissed Because Greenlight Fails to Allege Misappropriation.**

To allege a violation of the Georgia Trade Secrets Act, a party must allege that (1) it has a trade secret, and (2) the trade secret was misappropriated.   *Contract Furniture Refinishing & Maintenance Corp. of Georgia v. Remanufacturing & Design Group, LLC*, 317 Ga. App. 47, 55 (2012).   "Misappropriation" requires either that information was disclosed, or that the information was acquired "by a person who knows or has reason to know that the trade secret was acquired by improper

means." O.C.G.A. § 10-1-761(2). Greenlight alleges that Mr. Nichols misappropriated Greenlight's trade secrets by acquiring it as part of his job at Facebook working with Greenlight and subsequently accepting employment with Step, a Greenlight competitor. Greenlight alleges that "[u]pon information and belief, Nichols already disclosed during the recruitment process and/or is presently disclosing Greenlight's confidential and proprietary trade secret information during the course of his employment at Step." Compl. ¶ 28. Greenlight alleges in alternative fashion that Mr. Nichols either "already has" or "will inform" Step about Greenlight's trade secrets that he purportedly learned during his employment with Facebook. Compl. ¶¶ 31-39. Although Greenlight alleges these alternative legal conclusions to track the requirements of Georgia's trade secrets statute, "conclusory statements in support of a threadbare recital of the elements of a cause of action will not" survive a motion to dismiss. *Smith*, F. App'x at 427.

In *Putters v. Rmax Operating, LLC*, 2014 WL 1466902 (N.D. Ga. 2014), Putters, a sales manager, resigned from Rmax. During his employment at Rmax, Putters had access to confidential information concerning Rmax's customers, pricing, and business strategy, and had knowledge of Rmax's proprietary work on wall insulation. Putters subsequently went to work for an Rmax competitor. Following his resignation, Rmax discovered Putters had downloaded documents

containing proprietary and confidential information to an external hard drive before turning in his computer and phone. *Id.* at *1. The court determined that, even assuming Putters obtained the documents after his resignation, there was no misappropriation because Putters initially acquired the alleged trade secrets during his employment and therefore did not acquire trade secrets using improper means. *Id.* at *3. The court further found that Rmax's claim that Putters violated the GTSA by disclosing certain trade secrets also failed because "Rmax has failed to make a plausible allegation that [Putters] disclosed any of Rmax's confidential information to [his new employer] Atlas Roofing." *Id.*.

As in *Putters*, Greenlight fails to allege any specific facts to support its conclusory allegations that Mr. Nichols improperly obtained or disclosed Greenlight's trade secrets. Greenlight alleges no facts to indicate that Mr. Nichols disclosed its confidential information to anyone at Step. Instead, Greenlight speculates that because Mr. Nichols inquired about another company which competes with Greenlight during one meeting while he was at Facebook, Mr. Nichols "already disclosed . . . and/or is presently disclosing Greenlight's confidential and proprietary trade secret information during the course of his employment at Step." Compl. ¶ 28. These speculative allegations cannot serve the basis of a misappropriation claim and stating the "sheer possibility" of disclosure is

not enough to survive a motion to dismiss.[3]  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotations and citations omitted); *see also Putters*, 2014 WL 1466902, at *3 (holding that "Rmax's conclusory allegation of disclosure is 'not entitled to the assumption of truth'" because "[c]oncluding otherwise could potentially impose the burdens of discovery on any employee that leaves a company for a different job— all because that employee had previously been exposed to confidential information.").   Greenlight cannot establish misappropriation by alleging Mr. Nichols acquired its trade secrets using "improper"[4] means either.   Greenlight does not allege that Mr. Nichols used any devious means to obtain its trade secrets.   In fact, it is undisputed that the May 5, 2021 Zoom meeting took place as part of Mr.

---

[3] While it is unclear from Greenlight's complaint, Greenlight also appears to rely on an inevitable disclosure theory.   In *Georgia*, the inevitable disclosure doctrine as applied to the misappropriation of trade secrets is extremely limited. *See Holton v. Physician Oncology Servs., LP*, 292 Ga. 864, 870 (2013).   In *Holton*, the Georgia Supreme Court held that "the inevitable disclosure doctrine is not an independent claim under which a trial court may enjoin an employee from working for an employer or disclosing trade secrets." *Id.* Accordingly, a court may not base a claim for relief under the GTSA solely on the risk of future disclosures. *See id.*

[4] Under Georgia law, "'improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means." O.C.G.A. §10-1-761(1).

Nichols's work for Greenlight which was in turn part of his responsibilities at Facebook, and that Greenlight willingly provided Mr. Nichols with the information which Greenlight now claims was improperly obtained.

Because Greenlight has failed to allege that Mr. Nichols acquired trade secrets through improper means or that he disclosed any such information, Greenlight's trade secrets claim must be dismissed.  Given Greenlight's trade secrets claim fails, its derivative claims for injunctive relief and attorney's fees must also be dismissed.

### C.    Greenlight's Trade Secrets Claim Against Mr. Nichols Violates California and Georgia's Public Policy.

Mr. Nichols has at all relevant times been a resident of California. California has a strong policy against restraints of trade and, in fact, invalidates "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind."  Cal. Bus. & Prof. Code § 16600 (1941).  Section 16600 has specifically been held to invalidate employment contracts which prohibit an employee from working for a competitor when employment has terminated, unless necessary to protect the employer's trade secrets.  Similarly, Georgia's public policy does not prevent a departing employee from using the skills and information he acquired at work.  *See Servicetrends, Inc. v. Siemens Med. Sys., Inc.*, 870 F. Supp. 1042, 1074 (N.D. Ga. 1994).  Georgia courts consistently hold that "[a] person who leaves the employment of another has a right to take with him all the

skill he has acquired, all the knowledge he has obtained, all the information that he has received, so long as nothing is taken that is the property of the employer." *Id.*

Although Mr. Nichols was not employed by Greenlight, these principles similarly apply to his freedom to practice his trade and to use the experience he learned as a professional working with fintech companies to his advantage in his future employment, so long as he is not using or disclosing information that is otherwise protected by law.  As stated above, Greenlight has not alleged facts sufficient to support a misappropriation claim.  Therefore, the relief sought by Greenlight in its Complaint, including injunctive relief to prevent Mr. Nichols from engaging in his profession for Greenlight's competitor, amounts to unlawful restraint of trade that is fundamentally inconsistent with both California and Georgia law and therefore, should be dismissed.

## CONCLUSION

For the foregoing reasons, Mr. Nichols respectfully requests that the Court grant his Motion to Dismiss.

[SIGNATURE BLOCK FOLLOWS]

Respectfully submitted, this 14th day of June, 2021.

THE KHAYAT LAW FIRM

By:     /s/ *Robert C. Khayat, Jr.*
        Robert C. Khayat, Jr.
        Georgia Bar No. 416981
        75 Fourteenth Street, N.E.
        Suite 2750
        Atlanta, Georgia 30309
        Telephone: (404) 978-2750
        Facsimile: (404) 978-2901
        Email: rkhayat@khayatlawfirm.com

        *Attorney for Defendant Jordan Nichols*

## LR 7.1(D) CERTIFICATE OF FONT COMPLIANCE

I hereby certify that the foregoing **"*Specially Appearing Defendant Jordan Nichols's Memorandum Of Law In Support Of His Motion To Dismiss The Complaint Pursuant To Fed. R. Civ. Proc. 12(B)(2) and 12(B)(6)"*** has been prepared with one of the font and point selections approved by the Court in Rule 5.1(C) of the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, specifically Times New Roman 14 pt. font.

<u>/s/ Robert C. Khayat, Jr.</u>
Robert C. Khayat, Jr.
Georgia Bar No. 416981

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the foregoing "***Specially Appearing Defendant Jordan Nichols's Memorandum Of Law In Support Of His Motion To Dismiss The Complaint Pursuant To Fed. R. Civ. Proc. 12(B)(2) and 12(B)(6)***" upon counsel in this matter by U.S. mail, sufficient postage pre-paid, addressed as follows:

Jeffrey L. Mapen, Esq.
Jessica R. Watson, Esq.
Nelson Mullins Riley & Scarborough LLP
201 17th Street
17th Floor
Atlanta, Georgia 30363

This 14th day of June, 2021.

THE KHAYAT LAW FIRM
By:    /s/ *Robert C. Khayat, Jr.*
Robert C. Khayat, Jr.
Georgia Bar No. 416981
75 Fourteenth Street, N.E.
Suite 2750
Atlanta, Georgia 30309
Telephone: (404) 978-2750
Facsimile: (404) 978-2901
Email: rkhayat@khayatlawfirm.com

*Attorney for Defendant Jordan Nichols*